UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EMILY W. HAWKINS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 4:18CV382 RLW |
| ) | |
| THE ST. LOUIS RAMS, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the separate Motions to Dismiss filed by Defendants The Los Angeles Rams, LLC, and The St. Louis Rams, LLC, ("Rams")[1] (ECF No. 15) and Defendant Keely Fimbres-Bledsoe (ECF No. 17). The Rams' and Fimbres-Bledsoe's separate motions to dismiss are fully briefed and ready for disposition. After careful consideration, the Court will grant both motions to dismiss.

## BACKGROUND

In January 2016, Ms. Hawkins worked as a cheerleader for the Rams and was part of a group of cheerleaders and the team's mascot that traveled to Al Udeid Air Base in Qatar for a goodwill trip. Ms. Hawkins's supervisor, Keely L. Fimbres-Bledsoe, worked for the Rams as the Director of Special Events. Jeff Thornton is the president of the company that contracted with the Rams and organized the trip, Lone Wolf Entertainment, Inc. ("Lone Wolf"). Both Fimbres-Bledsoe and Thornton traveled with the group to Qatar.

The group arrived in Qatar on January 22, 2016. Upon their arrival, another cheerleader was informed her name was not on the clearance list. Fimbres-Bledsoe elected to stay with the

---

[1] At the time of Ms. Hawkins's injury, the official name of team was The St. Louis Rams, LLC. The team subsequently relocated and changed its name to The Los Angeles Rams, LLC. Despite being the same entity, Plaintiffs named each as separate defendants.

other cheerleader at a hotel in Doha while the others progressed to the base. The next morning, January 23, the group began their tour of the base.

That afternoon, a United States service member told Ms. Hawkins she had been chosen for a recreational ride in a four-wheel utility task vehicle ("UTV") driven by another service member. Ms. Hawkins wore a helmet and seatbelt while riding in the UTV. At some point, the UTV tipped over and a metal bar rolled onto Ms. Hawkins's right lower leg. She was taken by ambulance to the medical facility at the base and was diagnosed with fractures of her distal tibia and distal fibula, among other injuries.

Ms. Hawkins's doctor at the base set her bones with an external fixator but recommended she be evacuated in order to receive further treatment, including surgery. She was unable to travel by a standard commercial flight back to the United States, and the Air Force determined it could not legally have a funding source for such an evacuation. Fimbres-Bledsoe communicated with other employees of the Rams in Missouri about the situation. The Air Force and the Rams disagreed about who was responsible for the cost of evacuating Ms. Hawkins back to the United States for further medical care. The Air Force secured a medical evacuation flight that required the Rams submit a pre-payment of approximately $150,000.00 by a specific time on January 26. Although the Rams missed that initial deadline, they later made the pre-payment and Ms. Hawkins departed Qatar on January 28 – five days after her initial injury.

Before departing, Ms. Hawkins had undergone three surgeries under general anesthesia at the base. Upon Ms. Hawkins's return to St. Louis, she continued to receive treatment and underwent three additional surgeries as well as other treatments and therapies. She claims she still suffers from permanent injuries, disabilities, scarring, and deformity.

2

Plaintiffs initially filed this lawsuit in the Circuit Court of the City of St. Louis. Ms. Hawkins alleges separate counts of negligence against the Rams (Count I against The St. Louis Rams and Count II against The Los Angeles Rams), Fimbres-Bledsoe (Count III), Lone Wolf and Jeff Thornton (Count IV), and Mr. Hawkins alleges loss of consortium against all defendants (Count V). The Rams removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, alleging both diversity jurisdiction[2] and federal question jurisdiction due to Ms. Hawkins's injury occurring on a United States military base.[3] Subsequently, the Rams filed a Motion to Dismiss (ECF No. 15) and Fimbres-Bledsoe filed a Motion to Dismiss (ECF No. 17).

In addition, the Court ordered Plaintiffs to show cause why Thornton and Lone Wolf had not been served within 90 days of the case being removed to federal court as required by Federal Rule of Civil Procedure 4(m). (ECF No. 29) They timely responded and explained that Thornton now lives in Thailand. Because Thailand is not a party to the Hague Service Convention on the Service Abroad of Judicial and Extrajudicial Documents,[4] the Court ordered Plaintiffs to serve Thornton and Lone Wolf pursuant to Rule 4(f)(2). Plaintiffs have since filed a

---

[2] Plaintiffs are citizens of Missouri. As explained previously, the Rams had relocated to Los Angeles, California by the time Plaintiffs initiated this lawsuit. Fimbres-Bledsoe is also a citizen of California. According to Plaintiffs' petition, they believed Thornton and Lone Wolf were citizens of Texas at the time they initiated this lawsuit.

[3] The Rams did not cite any authority for the assertion that this Court "has original jurisdiction over tort actions for injuries occurring on military facilities." Presumably they are relying on the "federal enclave doctrine" of Article 1, Section 8, Clause 17 of the United States Constitution, which reserves to Congress the power to:

> exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

It is unclear, however, if this doctrine applies to military bases in foreign countries. *See Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066A, 2013 WL 5723324, at *4 (W.D.N.Y. Oct. 21, 2013) (holding that the federal enclave doctrine does not apply to military bases in foreign countries); *Gavrilovic v. Worldwide Language Res., Inc.*, 441 F. Supp. 2d 163, 176-77 (D. Me. 2006) (same). Regardless, this issue is immaterial as the Court clearly has diversity jurisdiction over the case.

[4] *Thailand*, U.S. State Dep't, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Thailand.html (last visited Jan. 29, 2019).

3

Notice of Dismissal without Prejudice against Thornton and Lone Wolf (ECF No. 35), which the Court hereby grants.

## LEGAL STANDARD

A complaint must be dismissed under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff).

However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

4

## DISCUSSION

### I. Motion to Dismiss Claims Against the Rams

The Rams argue that Plaintiffs are barred from bringing their claims because Missouri's Workers' Compensation Act ("the Act"), Mo. Rev. Stat. § 287.120 (Supp. 2013),[5] provides employers with complete immunity from liability against employees injured in the course of their employment. Section 287.120.1 provides, in relevant part: "Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident or occupational disease arising out of and in the course of the employee's employment." The statute further explains that "[t]he rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, [the employee's spouse], parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such injury or death by accident or occupational disease." *Id.* § 287.120.2.

Prior to filing this lawsuit, Ms. Hawkins filed a Claim for Compensation with the Missouri Department of Labor and Industrial Relations related to the same injury and listing the Rams as her employer.[6] The Rams filed an answer and affirmed Ms. Hawkins was an employee at the time of her injury and she was injured as the result of an accident arising in the course of her employment. Further, the Rams provided documentation that they have paid Ms. Hawkins temporary disability in accordance with the Act and paid for additional medical treatment for the same injury at the center of this lawsuit. Because Ms. Hawkins was an employee of the Rams at

---

[5] This version of section 287.120 was applicable at the time of Ms. Hawkins's injury in January 2016.
[6] The Rams attached Ms. Hawkins's Claim for Compensation and related documents to its Motion to Dismiss. (ECF No. 16-1, -2, -3) The Court can take judicial notice of such public records when considering a motion to dismiss. *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) ("When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.").

5

the time of her injury and she was injured in the course of her employment, her claims against the Rams are barred by the exclusivity provision of section 287.120.2.[7] Consequently, the Court dismisses Counts I and II.

In addition to Ms. Hawkins's negligence claims against the Rams, Mr. Hawkins alleges loss of consortium against all of the defendants in Count V. The Supreme Court of Missouri has held that "[l]oss of consortium is a derivative claim that arises out of the original injury to the spouse. As such it falls directly within the exclusion of section 287.120.2 to rights and remedies 'on account of such accidental injury.'" *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 465 (Mo. 2001) (en banc). Accordingly, the Court also dismisses Count V against the Rams as it is barred by the Act's exclusivity provision.

## II. Motion to Dismiss Claims Against Fimbres-Bledsoe

*(a) History of Co-Employee Liability in Missouri*

There has been ambiguity concerning application of the exclusivity provision in the Act with regard to actions against co-employees. Prior to 2012, the Act did not provide co-employees with immunity from actions brought by injured employees.[8] For injuries or deaths occurring after August 28, 2012, section 287.120.1 provides in pertinent part:

---

[7] In Plaintiffs' response to the Rams' motion to dismiss, Plaintiffs explain they were investigating whether Ms. Hawkins was an employee, subcontractor, or statutory employee of the Rams at the time they initiated this lawsuit. (ECF No. 23) Plaintiffs now concede to the Court's dismissal of the counts against the Rams.

[8] In 2016, the Supreme Court of Missouri clarified that previous state appellate court decisions had erroneously interpreted the exclusivity provision to apply to co-employees in certain circumstances. *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 (Mo. 2016) (en banc). *Peters* explained how the Act did not originally mention actions by one employee against a co-employee. *Id.* at 791. Prior to 2005, the Act explicitly called for its provisions to be "liberally construed with a view of the public welfare." Mo. Rev. Stat. § 287.800 (2000). Missouri's legislature amended the statute to require strict construction of its workers' compensation laws. Mo. Rev. Stat. § 287.800 (2005). *Peters*, however, explains that "whether liberally or strictly construed, '[c]ourts cannot add words to a statute under the auspice of statutory construction.'" 489 S.W.3d at 792 n.6 (quoting *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390 (Mo. 2002) (en banc)). Because the Act prior to 2012 provided immunity only for employers, courts could not extend such immunity to co-employees. *Id.* Recent opinions from the Supreme Court of Missouri have further clarified the proper interpretation of the exclusivity provision with regard to co-employees during the period between 2005 and 2012: after the Act was amended to require strict construction but before it was amended to explicitly provide immunity for co-employees. *See Conner v. Ogletree*, 542 S.W.3d 315

6

> Any employee of such employer shall not be liable for any injury or death for which compensation is recoverable under this chapter and every employer and employees of such employer shall be released from all other liability whatsoever, whether to the employee or any other person, *except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.*

Mo. Rev. Stat. § 287.120.1 (Supp. 2013) (emphasis added).

Recent decisions from this district explain that section 287.120.1 post-2012 does not create a cause of action by which an injured employee can bring a lawsuit against a co-employee; rather, it provides co-employees with immunity unless the injured employee can establish the co-employee's conduct meets the exception. *A.T. v. Newark Corp.*, No. 4:16CV00448 SNLJ, 2017 WL 57251, at *3 (E.D. Mo. Jan. 5, 2017); *see also Halsey v. Townsend Corp. of Indiana*, No. 1:17CV4 SNLJ, 2017 WL 2189459, at *2 (E.D. Mo. May 18, 2017). Essentially, there is now a two-part analysis:

> First, has the "[co-]employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury" to the injured employee so that the co-employee is not entitled to immunity. If so, has the injured employee made allegations that otherwise establish a claim of common law negligence.

*A.T.*, 2017 WL 57251, at *3.

*(b) Plaintiffs Have Failed to Allege a Duty Separate and Distinct from the Rams' Nondelegable Duty to Provide a Safe Workplace*

As an initial matter, Plaintiffs suggest it would be inappropriate for the Court to dismiss their claims before "a reasonable amount of discovery" can take place to allow them to investigate and obtain proof of her claims against Fimbres-Bledsoe. (ECF No. 31) This argument, however, mischaracterizes the relevant issue before the Court as one of fact rather than one of law. "The determination of the scope of an employer's duty is indistinguishable

---

(Mo. 2018) (en banc); *McComb v. Norfus*, 541 S.W.3d 550 (Mo. 2018) (en banc); *Fogerty v. Armstrong*, 541 S.W.3d 544 (Mo. 2018) (en banc).

from the determination of the existence of a duty, which is clearly a question of law." *McComb v. Norfus*, 541 S.W.3d 550, 555 (Mo. 2018) (en banc) (citing *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 793-94 (Mo. 2016) (en banc); *Parr v. Breeden*, 489 S.W.3d 774, 782 (Mo. 2016) (en banc)). Consequently, discovery need not take place before the Court can determine whether Fimbres-Bledsoe engaged in an affirmative negligent act and whether she owed a duty separate and distinct from the Rams.

It is unnecessary for the Court to determine whether Plaintiffs have alleged Fimbres-Bledsoe "engaged in an affirmative negligent act" thereby removing statutory immunity because they have failed to establish a claim of common law negligence.[9] *See A.T.*, 2017 WL 57251, at *3. The Supreme Court of Missouri has explained that "an injured employee is barred from bringing common law negligence actions against a co-employee when the co-employee was performing a nondelegable duty owed by the employer." *McComb*, 541 S.W.3d at 555 (citing *Peters*, 489 S.W.3d at 796; *Parr*, 489 S.W.3d at 778). An employer's nondelegable duties include the following:

> 1. The duty to provide a safe place to work.
> 2. The duty to provide safe appliances, tools, and equipment for work.
> 3. The duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance.
> 4. The duty to provide a sufficient number of suitable fellow servants.
> 5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.

W. Keeton, *Prosser and Keeton on the Law of Torts*, sec. 80 at 569 (5th ed. 1984) (footnotes omitted); *McComb*, 541 S.W.3d at 554; *Peters*, 489 S.W.3d at 784; *Parr*, 489 S.W.3d at 779.

---

[9] The parties fully briefed the issue whether Fimbres-Bledsoe is entitled to immunity under the Act. Specifically, they submitted supplemental briefing addressing the application of an opinion from the Missouri Court of Appeals that was issued after the parties had initially briefed Fimbres-Bledsoe's motion to dismiss. *Brock v. Dunne*, No. ED105739, 2018 WL 4309412, at *6 (Mo. Ct. App. Sept. 11, 2018). The Supreme Court of Missouri, however, granted transfer in *Brock* on January 29, 2019 (No. SC97542). Accordingly, the court of appeals opinion is no longer good law. As explained more fully below, the Court can resolve this case without delving into the still-developing state case law on what constitutes an "affirmative negligent act" post-2012.

8

Accordingly, an injured employee can bring a common law negligence action against a co-employee only "if the injured employee can establish the co-employee owed a duty *separate and distinct from the employer's nondelegable duties*." *McComb*, 541 S.W.3d at 555 (emphasis added); *Peters*, 489 S.W.3d at 796; *Parr*, 489 S.W.3d at 778.

In *McComb*, a courier delivering medical supplies died after his vehicle slid off the road during a severe winter storm. *Id.* at 553. Prior to his death, the driver had communicated with his supervisors to ask if he should continue on his route despite the dangerous road conditions. *Id.* His supervisors instructed him to continue as scheduled. *Id.* His family sued the supervisors, alleging they were negligent as co-employees. *Id.*

The Supreme Court of Missouri affirmed the trial court's grant of summary judgment in favor of the supervisors and held that the driver's family had failed to demonstrate the supervisors owed him "a duty separate and distinct from the employer's nondelegable duties."[10] *Id.* at 557. "It was an employer's nondelegable duty at common law to provide a safe workplace, 'and it breaches that duty where it charged an employee with the responsibility to provide a reasonably safe work environment but the employee did not so provide.'" *Id.* at 556 (quoting *Peters*, 489 S.W.3d at 800). That duty, however, is not unlimited: "liability will not extend to the employer for 'the transitory risks which are created by the negligence of the servants themselves in carrying out the details of that work.'" *Id.* (quoting *Peters*, 489 S.W.3d at 795-96). Such a transitory risk is one "so unforeseeable to an employer as to remove it from the employer's nondelegable duty to provide a safe workplace." *Id.* *McComb* concluded that "the risks associated with driving a delivery vehicle in a region that experiences dangerous weather

---

[10] Again, the Supreme Court of Missouri was applying the version of section 287.120.1 in effect between 2005 and 2012. *McComb*, 541 S.W.3d at 553-54. The analysis is nevertheless instructive when evaluating whether "the injured employee made allegations that otherwise establish a claim of common law negligence" against a co-employee. *A.T.*, 2017 WL 57251, at *3.

9

conditions are reasonably foreseeable to employers." *Id.* at 557; *cf. Marshall v. Kan. City*, 296 S.W.2d 1 (Mo. 1956) (holding that a co-employee was liable after "suddenly and unexpectedly" shaking a compressor hose to remove kinks, which caused the plaintiff to trip). Consequently, the supervisors were not liable because they were performing the employer's nondelegable duty to provide a safe workplace. *McComb*, 541 S.W.3d at 557.

In this case, even if Plaintiffs had established Fimbres-Bledsoe engaged in an affirmative negligent act, they have failed to allege she owed a duty separate and distinct from the Rams' nondelegable duty to provide a safe workplace. Again, Plaintiffs argue Fimbres-Bledsoe was negligent by (1) failing to supervise Ms. Hawkins and prevent her from riding on a recreational vehicle; (2) failing to obtain travel insurance or an evacuation plan; (3) failing to arrange timely transportation after the alleged injury; (4) failing to create procedures and policies to have protected Ms. Hawkins; and, significantly, (5) *"fail[ing] to provide a safe working environment and conditions* for [Ms.] Hawkins while on the [tour]." Pet. 20-21 (ECF No. 5) (emphasis added). This final allegation confirms that the preceding examples of Fimbres-Bledsoe's alleged negligence all relate to the Rams' nondelegable duty to provide a safe workplace.[11]

---

[11] Plaintiffs cite another opinion from the Missouri Court of Appeals in support of their argument that Fimbres-Bledsoe owed a separate and distinct duty from the Rams' nondelegable duty to provide a safe workplace. The plaintiff in *Nolen v. Bess*, No. ED101591, 2016 WL 10998836, at *1 (Mo. Ct. App. Nov. 29, 2016), worked as a janitor at a university and was injured after falling off a set of bleachers. Prior to his injury, his supervisors instructed or permitted him to mop the bleachers without first installing guardrails despite him specifically asking that the guardrails be installed. *Id.* Initially, the appellate court reversed the trial court's grant of summary judgment in favor of the co-employees and held that they created a transitory risk by instructing the plaintiff to mop the bleachers without first installing protective guardrails. The Supreme Court of Missouri, however, transferred the case then retransferred it back to the Court of Appeals to reconsider in light of *McComb*, *Conner*, and *Fogerty*. *Nolen v. Cunningham*, 553 S.W.3d 437, 439 n.3 (Mo. Ct. App. 2018). On retransfer, the Court of Appeals reached the opposite conclusion and held that the alleged breach related squarely to the employer's nondelegable duty to provide a safe workplace. *Id.* at 442.

> That a co-employee would fail to use the safety measures put in place by the employer is the very negligence the Supreme Court found to be reasonably foreseeable in *Conner* and *McComb*. Just as it was reasonably foreseeable that the co-employees would fail to follow the employer's rules ... for safe driving in inclement weather in *McComb*, it was reasonably foreseeable that the co-employees in this case would not use the guardrails.

Consequently, Fimbres-Bledsoe is not liable for Plaintiffs' damages and the counts against her are dismissed.

### *(c) Challenge to Service on Fimbres-Bledsoe*

Finally, Fimbres-Bledsoe also argues the counts against her should be dismissed due to insufficient service of process. Missouri Rule of Civil Procedure Rule 54.13(b) requires personal service on an individual be effected "by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of fifteen years." Fimbres-Bledsoe attests in an affidavit that the summons and petition were left on her doorstep and the person to whom the Return of Service states the documents were given was a boy who was not related to her in any way. (ECF No. 18-4)

Plaintiffs argue Fimbres-Bledsoe's affidavit contains inadmissible hearsay. They further provided their process server's sworn Return of Service, which states the summons and petition were left with a named occupant of the house. (ECF No. 22-1) According to Plaintiffs, the address is a single family home and the process server fairly assumed the named individual was an occupant of the home and, therefore, a family member of Fimbres-Bledsoe. Ultimately, Plaintiffs argue they substantially complied with the service requirement and Fimbres-Bledsoe was not prejudiced by any alleged failing in service as she was able to respond and has been able to participate fully in this litigation.

Neither party cites to authority beyond the Supreme Court of Missouri Rule related to personal service. The Court, however, is persuaded that Fimbres-Bledsoe has not been prejudiced by any potential fault in Plaintiffs' attempt to serve her.

---

*Id.* As in the official reported opinion in *Nolen*, Fimbres-Bledsoe's alleged breaches relate entirely to the Rams' nondelegable duty to provide a safe workplace.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by the Rams (ECF No. 15) is **GRANTED** and all of Plaintiffs' claims against the Rams are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Fimbres-Bledsoe (ECF No. 17) is **GRANTED** and the claims against her are **DISMISSED with prejudice**.

**IT IS FINALLY ORDERED** that Plaintiffs' Notice of Dismissal without Prejudice against Thornton and Lone Wolf (ECF No. 35) is **GRANTED** and all claims against Thornton and Lone Wolf are **DISMISSED without prejudice**.

A separate Order of Dismissal accompanies this Memorandum and Order.

Dated this 30th day of January, 2019.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**